# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.               Case No. 07-CR-202

**KENNETH ROBINSON**
   **Defendant.**

## DECISION AND ORDER

 Defendant Kenneth Robinson pleaded guilty to possessing a firearm as a felon. Relying on the Supreme Court's recent decision in District of Columbia v. Heller, 128 S. Ct. 2783 (2008), he now moves to withdraw his plea and dismiss the indictment. In Heller, the Court struck down the District's ban on handgun possession, finding that the Second Amendment protects an individual right to possess certain weapons for self-defense in the home. Id. at 2797. Defendant claims that Heller renders the felon in possession statute, 18 U.S.C. § 922(g)(1), unconstitutional as applied to him. I deny the motion.

**I.**

 The district court may permit a defendant to withdraw his guilty plea prior to sentencing if he can establish a "fair and just reason" for doing so. Fed. R. Crim. P. 11(d)(2)(B). "However, a defendant has no absolute right to withdraw a guilty plea. When a defendant wishes to withdraw his plea after he states at a Rule 11 hearing that it was freely and knowingly given, he faces an uphill battle in persuading the judge that his purported reason for withdrawing his plea is fair and just." United States v. Schilling, 142 F.3d 388, 398 (7th Cir. 1998) (internal quote marks and citations omitted).

In the present case, defendant does not contend that his plea was unknowing or involuntary, or that he is not factually guilty of the crime alleged. Rather, he claims that subsequent legal developments void his prosecution. I will assume, arguendo, that a change in the law casting doubt on the constitutionality of § 922(g) could provide a basis for plea withdrawal. See Lee v. United States, 113 F.3d 73, 75 (7th Cir. 1997) (discussing a defendant's ability to withdraw his plea based on a change in the law suggesting that the facts admitted do not constitute a crime); see also United States v. Williams, 410 F.3d 397, 400 n.2 (7th Cir. 2005) ("Although Williams did not expressly reserve the right to appeal his conviction in the written plea agreement, we have previously treated an attack on the constitutionality of section 922(g)(1) as one that is jurisdictional in nature and therefore cannot be waived."). However, defendant fails to show that Heller renders his prosecution constitutionally infirm.

**II.**

First, defendant fails to demonstrate that Heller applies to felons. The Court specifically stated in that case:

> There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms. Of course the right was not unlimited, just as the First Amendment's right of free speech was not. Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose.
> . . .
> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. at 2799 & 2816-17 (internal citations omitted).

Defendant claims that this is dicta, but I cannot so quickly dismiss this explicit limitation

2

on the Court's holding.  Further, defendant cites no authority in support of his claim that the Second Amendment right extends to felons.  To my knowledge, no court has, even under an individual rights interpretation of the Second Amendment, found 18 U.S.C. § 922(g) constitutionally suspect.  E.g., United States v. Emerson, 270 F.3d 203, 262-63 (5th Cir. 2001) (finding that the Second Amendment protects individual rights, but nevertheless upholding § 922(g)(8)); see United States v. Gilbert, No. 07-30153, 2008 WL 2740453, at *2 (9th Cir. July 15, 2008) (noting that under Heller felons do not have a right to possess any firearms); see also Mullenix v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, No. 5:07-CV-154, 2008 WL 2620175, at *2 (E.D.N.C. July 2, 2008) (rejecting facial challenge to 18 U.S.C. § 925(d) under Heller); United States v. Dorosan, No. 08-042, 2008 WL 2622996, at *4-5 (E.D. La. Jun 30, 2008) (discussing the limitations of Heller).  Finally, the Seventh Circuit regularly rejected such challenges pre-Heller, see, e.g., United States v. Price, 328 F.3d 958, 961 (7th Cir. 2003) (noting that even advocates of an individual rights interpretation of the Second Amendment excluded felons), and nothing in Heller persuades me that the court of appeals is likely to change course now.

**III.**

Second, defendant can find little support in Heller given the circumstances of his case. Heller's actual holding is:

> that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense.  Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home.

Id. at 2821-22.  Defendant contends that he was accosted by police on the porch of his home

and found to be in possession of a firearm, which he claims he possessed to protect himself and his family in the high crime area in which they lived. However, he glosses over the circumstances of his encounter with the police. I set forth the facts in denying defendant's motion to suppress:

> On May 22, 2003, at about 22:43, Milwaukee Police Officers Thomas Obregon and Rodolfo Gomez, while on patrol in a marked squad car in the 2300 block of North 44th Street as part of a Neighborhood Safety Initiative,[1] observed three individuals in front of 2343 N. 44th Street. (Stipulation of Facts [R. 16] at 1; 11/1/07 Evid. Hr'g Tr. at 10.) Gomez testified that as they approached, the three individuals walked toward the gangway between two houses at a fast pace. (Tr. at 10-11.) The officers traveled past the three individuals and observed their shadows in the gangway. (Id. at 11.)
>
>> [1]Gomez testified that the Neighborhood Safety Initiative ("NSI") was a direct patrol mission for high crime areas in the City of Milwaukee. (11/1/07 Evid. Hr'g Tr. at 7.) Gomez further testified that the area of 2300 N. 44th Street was a high crime area, and that he was advised of violent crimes in the area such as armed robberies, shootings and drug dealing. (Id. at 9.) Officer Obregon testified that he worked in the district for about seven years, and that shootings, robberies, narcotics trafficking and batteries occurred there. (Id. at 30-31.) Obregon further testified that pursuant to the NSI officers were assigned to those specific areas where crime was highest based on crime analysis statistics. (Id. at 32.) He stated that the 2300 block of N. 44th Street was a target of the NSI. (Id. at 32.)
>
> A few minutes later, the officers returned to the area and saw one individual (later identified as defendant) on the sidewalk and the other two individuals on the porch steps in front of 2343 N. 44th Street. (Id. at 12-13.) The officers pulled up in front of 2343 N. 44th Street and exited their squad to conduct a field interview. As they did so, defendant walked towards the house at a fast face. Gomez said, "stop, police," but defendant started running up the porch steps towards the house. (R. 16 at 1-2; Tr. at 14-15, 34.) Gomez again yelled, "stop," and ran up the steps after defendant. Defendant tried to enter the house, which appeared to be locked, kicking at the door with his foot to gain entry. (R. 16 at 2; Tr. at 15.) Gomez approached defendant and grabbed his arm to try to turn him around. (Tr. at 16.) Defendant struggled, and Gomez observed defendant reach into his right front pants pocket to retrieve a firearm. (R. 16 at 2; Tr. at 17.) Gomez then disengaged from defendant and drew his own firearm. Defendant ran down the porch steps, and Officer Obregon tackled him. Gomez shouted that defendant

4

had a gun and, after a struggle, the officers placed defendant under arrest. The officers found a .380 caliber pistol in the area of the struggle and, on a subsequent search of defendant's person, recovered a .380 caliber bullet from defendant's pants pocket.[2] (R. 16 at 2.)

> [2]Defendant later advised officers that he lived at 2343 N. 44th Street (Id. at 23), but Gomez did not know that at the time of the stop (Id. at 16).

(R. 30 at 1-3.)[1]

Even under its broadest possible reading, Heller does not sanction a felon carrying a gun in his pocket in public, then pulling that gun on a police officer. The Second Amendment interests in self-defense and protection of the home discussed in Heller cannot reasonably be extended to cover defendant's conduct here.

**IV.**

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 40) is **DENIED**. The case will proceed to sentencing on July 28, 2008.

Dated at Milwaukee, Wisconsin, this 23rd day of July, 2008.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

[1]This statement of facts is consistent with the factual basis set forth in defendant's plea agreement, which defendant admitted was true and correct. (R. 33 at 2-3 ¶5.)

5